IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| DARON F. BROOKER, | CV 21-25-BLG-TJC |
| Plaintiff, | |
| | **ORDER** |
| vs. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Daron F. Brooker ("Brooker") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  (Doc. 2.)  The Commissioner subsequently filed the Administrative Record ("A.R.").  (Doc. 12.)

Presently before the Court is Brooker's motion for summary judgment, seeking reversal of the Commissioner's denial and remand for an award of disability benefits, or alternatively for further administrative proceedings.  (Doc. 14.)  The motion is fully briefed and ripe for the Court's review.  (Docs. 14-16.)

1

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court hereby finds the decision should be **REMANDED** for further administrative proceedings.

## I.     Procedural Background

Brooker completed his application for DIB and SSI on April 1, 2019.  (A.R. 13.)  The claims were denied, and Brooker requested a hearing on February 19, 2020.  (*Id.*)  A hearing was held on August 11, 2020, in Billings, Montana, before Administrative Law Judge Michele Kelley (the "ALJ").  (A.R. 35.)  On August 26, 2020, the ALJ issued a written decision finding Brooker not disabled.  (A.R. 13-26.)  Brooker requested review of the decision, and on January 4, 2021, the Appeals Council denied Brooker's request.  (A.R. 1-3.)  Thereafter, Brooker filed the instant action.

## II.    Legal Standards

### A.     Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).  *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may

reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). But even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d

653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

### B.      Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) he suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work he previously performed, or any other substantial gainful employment which exists in the national economy.  42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).  A claimant must meet both requirements to be classified as disabled.  *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process.  If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)).  The five steps are:

1.  Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2.  Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

## III.   The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering Brooker's claim. At step one, the ALJ found that Brooker had not engaged in substantial gainful activity since his alleged onset date of March 22, 2019. (A.R. 15.) At step two, the ALJ found Brooker had the following severe impairments: heart failure with cardiomyopathy, hypertension, and hypertensive cardiovascular disease. (A.R. 16.) At step three, the ALJ found that Brooker did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (A.R. 18.)

Before considering step four, the ALJ determined Brooker had the residual functional capacity ("RFC") to:

perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) as follows: lift, carry, push, and pull 10 pounds occasionally and less than 10

pounds frequently; stand and/or walk for about two hours total in an eight-hour workday with normal work breaks; sit for about six hours total in an eight-hour workday with normal work breaks; occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; occasionally balance on a narrow, uneven, or wet/slippery surface; frequently crouch and crawl; avoid concentrated exposure to extreme temperatures, fumes, odors, dusts, gases, or poor ventilation; and avoid concentrated exposure to hazards, including unprotected heights and dangerous machinery.  Normal work breaks are defined as breaks occurring every two hours, with two breaks lasting at least 10 minutes and one break lasting at least 30 minutes.  The claimant is able to understand, remember, and carry out simple, detailed, and complex tasks. He is able to maintain attention, concentration, persistence, and pace for such tasks during eight-hour workdays and 40-hour workweeks.  The claimant is also able to tolerate interactions with supervisors, coworkers, and members of the public.  Finally, the claimant is able to tolerate usual work situations and changes in routine work settings.

(A.R. 19.)

At step four, the ALJ found that Brooker was unable to perform any past relevant work.  (A.R. 24.)  Finally, at step five, the ALJ found that based on Brooker's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform, such as a document preparer, addressor, or escort driver.  (A.R. 25-26.) Accordingly, the ALJ found Brooker not disabled.  (A.R. 26.)

## IV.   Discussion

Brooker presents the following issues for review,[1] whether the ALJ: (1) properly concluded he did not meet Listing 4.02; (2) properly discounted his

---

[1] Brooker's "statement of issues presented for review" is difficult to reconcile with the arguments made in his briefing.  The issues are not restated in his argument,

subjective symptom testimony; (3) properly evaluated the medical opinion of Dr. Kristin Scott-Tillery; (4) failed to consider the frequency of his treatment; and (5) failed to incorporate all of his impairments into the vocational expert's hypothetical.  The Court will address each in turn.

### A.    The ALJ's Consideration of Listing 4.02

Brooker argues the ALJ erred in finding his impairments did not meet the Listing in section 4.02 of appendix 1.  (Doc. 14 at 18, 24-25.)  The Commissioner argues that Brooker's impairments did not stay at listing levels following treatment.  (Doc. 15 at 5.)

To meet Listing 4.02, there must be objective evidence of chronic heart failure, as described in 4.00D2, and a claimant must satisfy the severity requirements of one of the criteria in paragraph A and one of the criteria in paragraph B.  20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 4.00D4.  To satisfy paragraph A, there must be medical documentation of:

> 1.  Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or
>
> 2.  Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection

---

but instead, various arguments are interspersed throughout his brief.  Accordingly, the Court has restated the issues as articulated here to coincide with arguments presented in Brooker's brief.

fraction during a period of stability (not during an episode of acute heart failure).

*Id.*, at § 4.02A.

Then, under paragraph B, a claimant must show that one of the paragraph A criteria resulted in one of the following:

1.  Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or

2.  Three or more separate episodes of acute congestive heart failure within a consecutive 12–month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or

3.  Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:

    a.  Dyspnea, fatigue, palpitations, or chest discomfort; or

    b.  Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or

    c.  Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or

    d.  Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

*Id.*, at § 4.02B.

Here, the ALJ found that the objective medical evidence failed to establish systolic or diastolic failure, as required by paragraph A, and thus, did not meet Listing 4.02.  (A.R. 18.)  The ALJ's conclusion is supported by the evidence in the record.

Paragraph A requires medical documentation of systolic failure with left ventricular end diastolic dimensions greater than 6.0 cm *or* ejection fraction ("EF") of 30% or less during a period of stability.  20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 4.02A.1.  In March 2019, Brooker's first echocardiogram ("echo") showed an EF of 20-24%.  (A.R. 338.)  After this finding, Brooker was started on cardiac medications and referred to cardiology for further testing.  (A.R. 484-85.)  In May 2019, a repeat echo and transesophageal echo continued to show an EF of 20-24%. (A.R. 413, 650.)  After beginning a medication regime, however, Brooker's EF increased, and stayed above 30%.  (*See* A.R. 357 (Echo in August 2019 showing an EF of 40-44%); 725 (Echo in November 2019 showing an EF of 45-49%); 747 (Echo in February 2020 showing an EF of 40-44%); 751 (Cardiac MRI in April 2020 showing an EF of 39%).)  Thus, Brooker's EF did not stay at 30% or below for a continuous twelve-month period, and so, the medical evidence does not show systolic failure at the severity level required by paragraph A.  *See* 20 C.F.R. § 404.1525(c)(4) ("[T]he evidence must show that [the claimant's] impairment(s)

9

has lasted or can be expected to last for a continuous period of at least 12 months.").

Further, there is no evidence of diastolic failure under paragraph A at listing level severity.  Brooker asserts that "[t]he findings of the July 13, 2020 cardiac MRI confirm he met the Listing or is equivalent to the Listing."  (Doc. 14 at 24.)  It appears Brooker is referring to Dr. Scott-Tillery's July 13, 2020, progress report and the cardiac MRI from April 2020.  (A.R. 757-59.)  This report showed Brooker's EF was 39%, above the required 30%, and does not document other criteria to satisfy paragraph A.  (A.R. 751-52.)  Brooker also argues that Dr. Scott-Tillery "not[ed] he was not able to exercise or push himself secondary to" his diagnoses of cardiomyopathy and noncompaction.  (Doc. 14 at 25.)  This is not a fully accurate recitation of Dr. Scott-Tillery's assessment.  Instead, the note reads that Brooker could not "exercise or push himself to the level that he did before" and "that he cannot do competitive sports" due to his diagnoses of cardiomyopathy and noncompaction.  (A.R. 758.)  Additionally, there are no other findings in the report relative to the diastolic failure requirements under paragraph A.

With respect to the paragraph B criteria, there is no objective medical evidence to show that Brooker's impairments: (1) seriously limited his ability to independently complete activities of daily living; (2) resulted in three or more consecutive episodes of acute heart failure within a consecutive twelve-month

10

period; or (3) prevented him from performing an exercise tolerance test at a workload equivalent to 5 METs or less.  20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 4.02B.  Thus, there is no evidence to support a finding that Brooker satisfies any of the paragraph B criteria.

In sum, Brooker's impairments did not satisfy one of the paragraph A criteria for a consecutive twelve-month period and did not result in one of the paragraph B criteria, and thus, did not meet the level of severity required for Listing 4.02.  *See* 20 C.F.R. § 404.1525(d) ("To meet the requirements of a listing, [the claimant] must have a medically determinable impairment(s) that satisfies all of the criteria in the listing.).

Accordingly, the ALJ's step three analysis is supported by substantial evidence.

### B.     Brooker's Subjective Symptom Testimony

Brooker argues that the ALJ improperly discounted his subjective symptom testimony without providing clear and convincing reasons for rejecting his testimony.  (Doc. 14 at 29.)  The Commissioner asserts that the ALJ reasonably discounted Brooker's subjective complaints because his physical examinations did not support his complaints, his cardiac impairments improved with treatment, and his alleged symptoms were inconsistent with his ability to return to graduate school.  (Doc. 15 at 6-7.)

11

The credibility of a claimant's testimony is analyzed in two steps. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* Second, if there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so. *Id.* "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). *See also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). The clear and convincing standard "is not an easy requirement to meet: [it] is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (internal quotation and citation omitted).

To assess a claimant's subjective symptom testimony, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained

failure to seek or follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). An ALJ may also take the lack of objective medical evidence into consideration. *Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

Here, the ALJ determined that Brooker's medically determinable impairments could reasonably be expected to cause his symptoms, and there is no argument that he is malingering. (A.R. 20.) Therefore, the ALJ was required to cite specific, clear, and convincing reasons for rejecting Brooker's subjective testimony about the severity of his symptoms. The Court finds the ALJ failed to do so.

First, the ALJ found that Brooker's subjective complaints were not entirely consistent with the objective medical evidence. (A.R. 20.) The ALJ chronicles Brooker's echocardiogram results and cardiac MRI, noting that his EF and mitral regurgitation improved since the alleged onset date. (A.R. 21.) The ALJ concludes this improvement "is inconsistent with the claimant's subjective complaints." (*Id.*) But, confusingly, the ALJ immediately follows this finding with the statement, "[b]ut the cardiac MRI showed non-compaction of the left ventricle, which is generally consistent with the claimant's continued complaints of feeling ill." (*Id.*) The ALJ's statements are conflicting. The ALJ appears to find

13

that Brooker's improvements are inconsistent with his subjective complaints, while also acknowledging that the same results are consistent with his subjective complaints.  In addition, the ALJ does not explain why Brooker's test results, even if improved, are in any way inconsistent with any of his testimony, and therefore, does not provide a clear and convincing reason to discredit Brooker's testimony.

Second, the ALJ found that Brooker's subjective complaints were inconsistent with his physical examinations.  (*Id.*)  The ALJ cites to various cardiology and primary care visits and determined these records showed "mostly normal physical examinations."  (*Id.*)  The cardiology records cited, however, frequently document a systolic murmur radiating to the axilla, and consistently document Brooker's diagnoses of nonischemic cardiomyopathy, severe mitral regurgitation, heart failure, and ongoing treatment.  (*See* A.R. 322-23, 325-26, 336, 355, 387-88, 391, 733.)

The ALJ also relies on primary care records that showed "normal" physical exams when Brooker was seen for medication refills, difficulty sleeping, and shortness of breath while sleeping.  (A.R. 295, 298-99, 304-05, 308-09, 544-45.) These findings do not provide clear and convincing reasons to discredit Brooker's testimony.  Brooker's cardiac condition was treated by a cardiac specialist, not through primary care, and these findings do not rebut the objective medical findings of his cardiac conditions.  Further, the ALJ again does not point to any

specific testimony that these records purportedly contradict or explain how these records discredit Brooker's subjective complaints.

Third, the ALJ found that Brooker's ability to resume his master's studies to be inconsistent with his allegations of disability. (A.R. 21.) The ALJ cites to a counselor's office note stating that Brooker had gone back to school after his diagnoses, but notes he testified he stopped pursuing his degree due to cost. (A.R. 21-22, 500.) The ALJ also found Brooker's ability to return to school to be inconsistent with a September 2019 function report, in which Brooker reported "feeling exhausted, dizzy, and nauseous throughout the day" and laying on the couch for most of the day. (A.R. 22, 233-34.)

At the hearing, however, Brooker testified that his degree was "on hold," both because he could not afford the costs, since stopping work due to his diagnoses, *and* due to his health and resulting inability to focus. (A.R. 22, 44.) "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). But here, Brooker's testimony that he stopped pursing his degree is not contradicted by his testimony at the hearing that he did so due to cost, and his health issues and inability to focus. Nor is it inconsistent with the function report in which he alleged difficulty with concentration and fatigue. (A.R. 44, 238.) Therefore, although Brooker attempted to go back to school, this

fact alone does not provide clear and convincing reasons to reject his testimony, particularly when his effort to return to school was not successful. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) (holding that a work attempt alone is not necessarily a clear and convincing reason to reject a claimant's subjective pain and symptom testimony).

Last, the ALJ found that "despite the evidence in the record of persistent fatigue and bouts of dizziness and lightheadedness, the conservative treatment history and the claimant's repeated denials of shortness of breath and chest pain are inconsistent with his subjective complaints." (A.R. 22.) At the hearing, Brooker testified to difficulty with balance, shortness of breath, dizziness, fatigue, and chest heaviness. (A.R. 47-48.) While it is true that he denied shortness of breath and chest pain, at times, the medical records show that Brooker did complain of these symptoms. (*See* A.R. 308-09, 355, 732, 743.) In addition, there is no evidence in the record to indicate that Brooker's condition is typically accompanied by chronic chest pain and shortness of breath, rather than episodic flareups of those symptoms.

With respect to conservative treatment, it appears Brooker was given a complete workup, and was being treated with several medications. When his symptoms arose, he was scheduled for an EKG, lab studies, and an echo. (A.R. 309.) After the echo in March 2019, Brooker was diagnosed with cardiomyopathy

and hearth failure, with an EF of 20-24%, severe mitral regurgitation, and dilated left ventricle and left atrium.  (A.R. 338-39, 483-84.)  At this time, he was started on medications and referred to a specialist for follow-up.  (A.R. 484-85.) Brooker's medication regime was adjusted numerous times, and he required ongoing monitoring and repeat testing.  (*See* A.R. 325, 336, 355-56, 387, 734.) The ALJ does not explain why this course of treatment contradicts any of Brooker's testimony, nor is there any evidence in the record to suggest that more aggressive treatment is indicated for Brooker's condition.  In fact, his cardiologist noted that he was "currently on maximal treatment" in March 2020.  (A.R. 756.)

For the foregoing reasons, the Court finds the ALJ's decision to discredit Brooker's testimony was not based on substantial evidence, and her findings are insufficient to allow the Court to find she "did not arbitrarily discredit claimant's testimony." *Turner*, 613 F.3d at 1224 n.3.  The ALJ did not identify what testimony was not credible and what evidence undermines Brooker's complaints. Therefore, the Court finds that the ALJ's credibility finding is unsupported by specific, clear and convincing reasons.

/ / /

/ / /

/ / /

/ / /

17

### C.     The ALJ's Evaluation of Medical Opinion Evidence

Brooker argues the ALJ failed to properly consider the medical opinion of Dr. Scott-Tillery.[2]  (Doc. 14 at 20, 25.)  The Commissioner counters that the medical evidence was appropriately evaluated.  (Doc. 15 at 8.)

Brooker argues that the ALJ erred in failing to give deference to Dr. Scott-Tillery, as a treating physician, and failed to provide clear and convincing reasons for rejecting her opinions.  But because Brooker applied for benefits after March 27, 2017, the ALJ considered the medical evidence under a new set of regulations governing the evaluation of medical opinion evidence.  20 C.F.R. §§ 404.1520c, 416.920c.  The new regulations eliminated the use of the term "treating source" and eliminated the traditional hierarchy between treating, examining, and non-examining physicians.  *Id.*  Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . ."  20 C.F.R. §§ 404.1520c(a); 416.920c(a).  The ALJ is directed to consider medical opinions or prior administrative medical findings together according to the following factors: supportability, consistency, relationship with the claimant, specialization, and other factors such as the medial source's familiarity with other evidence in the claim or understanding of the disability

---

[2] Brooker argues the ALJ "erred in discounting multiple treating physicians" but only mentions Dr. Scott-Tillery in his argument.  (Doc. 14 at 20.)

program requirements.  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  The two most important factors are supportability and consistency, and the ALJ must explain how those factors were considered in the decision.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ is generally not required to explain how the remaining factors were considered, except when deciding among differing, yet equally persuasive opinions or findings on the same issue.  *Id.*

The Ninth Circuit has determined that these revised regulations are irreconcilable with its prior cases affording deference to the opinions of treating physicians, and with the requirement that the ALJ provide specific and legitimate reasons for rejecting the opinions of a treating physician.  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Under the new regulations the "ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."  *Id.* at 787.

Nevertheless, the ALJ cannot reject a doctor's opinion "without providing an explanation supported by substantial evidence."  *Id*. at 792.  Such an explanation must "'explain how [it] considered the supportability and consistency factors' in reaching these findings."  *Id.*  "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'"  *Id*. at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)).  "Consistency means the extent to which a medical opinion is 'consistent . . . with

the evidence from other medical sources and nonmedical sources in the claim.'"
*Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

Here, the ALJ considered Dr. Scott-Tillery's opinions, but, ultimately, found
them unpersuasive.  (A.R. 24.)  First, the ALJ cites to Dr. Scott-Tillery's treatment
note from July 2020, which opined "[w]e did have a conversation today about
activity level with noncompaction being limited and that he cannot do competitive
sports."  (A.R. 758.)  The ALJ found this statement unpersuasive because it did not
"address what [Brooker] can still do despite his impairments or whether he has one
or more impairment-related limitations or restrictions in the [sic] abilities to
perform physical, mental, or other demands of work activities and adapt to
environmental conditions [sic]."  (A.R. 23-24.)  Treatment notes generally do not
constitute medical opinions.  *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) ("A
medical opinion is a statement from a medical source about what you can still do
despite your impairment(s) and whether you have one or more impairment-related
limitations or restrictions" in your work-related abilities.").  Thus, because the
treatment note did not address what Brooker can still do, or whether he had an
impairment-related limitation or restriction on his ability to work, the ALJ was not
required to consider the supportability or consistency of the note under the
requirements of 20 C.F.R. §§ 404.1520c, 416.920c.  Nevertheless, the ALJ states

that the "residual functional capacity sufficiently incorporates these nonspecific statements."  (A.R. 24.)

The ALJ also referenced Dr. Scott-Tillery's March 2020 one-page opinion entitled "Determination of Infirmity."  (A.R. 24, 756.)  There, Dr. Scott-Tillery opined that Brooker has a physical or mental disability that substantially impairs his walking, cognitive ability, and "any physical activity."  (A.R. 756.)  Dr. Scott-Tillery also checked that she believed Brooker's impairments prevent him from engaging in substantial gainful work and wrote, "[patient] is unable to perform any substantial physical activity."  (*Id.*)

The ALJ did not mention the terms supportability or consistency in her discussion of this opinion, although she addressed both in substance.  As to supportability, the ALJ stated that "this vague statement is unsupported by any explanation."  (A.R. 24.)  She also pointed out that Dr. Scott-Tillery had never evaluated Brooker's cognitive functioning, and there had been no reported problems with memory, or understanding or following instructions in his function reports.  As to consistency, the ALJ found that Dr. Scott-Tillery's report of cognitive impairment was inconsistent with her recommendation that Brooker pursue his master's degree.  (*Id.*)  She also found it inconsistent with reports that Brooker's memory was intact.  Additionally, the ALJ pointed out that he was never observed with abnormal gait or difficulty walking.  (*Id.*)

Therefore, although not specifically mentioned, it appears the ALJ did address the supportability and consistency of Dr. Scott-Tillery's report in discounting her opinions.  Accordingly, the Court finds the ALJ did not err in considering the medical opinion evidence.

###    D.    Frequency of Treatment

Brooker also argues the ALJ improperly ignored Social Security Rulings ("SSR") 96-8p, which requires consideration of the effects of the claimant's medical treatment on the RFC by incorporating the frequency and duration of treatment, and SSR 16-3p, which also requires consideration of treatment for pain and other symptoms.  (Doc. 14 at 17-19.)

SSRs 96-8p and 16-3p require the ALJ to consider the effects of medical treatment in developing the RFC.  SSR 96-8p, 61 Fed. Reg. 34474-01, 1996 WL 362207; SSR 16-3p, 2017 WL 5180304.  SSR 96-8p requires the RFC assessment to be based on all relevant evidence, such as "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)."  SSR 96-8p, 61 Fed. Reg. at 34477.  SSR 16-3p relates more specifically to symptom evaluation, and requires that treatments received for pain or other symptoms be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms.  SSR 16-3p, 2017 WL 5180304, at *8.

An ALJ's failure to consider the effect of a claimant's treatment needs may constitute reversible error.  *See Bourcier v. Saul*, 856 Fed. App'x 687, 691 (9th Cir. 2021); *Edmunds v. Kijakazi*, 2021 WL 4452762, at *6 (D. Mont. Sept. 29, 2021); *Jones v. Kijakazi*, 2022 WL 595729, at *4 (D. Mont. Feb. 28, 2022); *Chase v. Saul*, 2022 WL 819680, at *7-8 (D. Mont. Mar. 18, 2022); *Mariah v. Saul*, 2021 WL 1660947, at *8 (D. Mont. Apr. 28, 2021).

Here, Brooker asserts he averaged 5.75 cardiac visits per month.  (Doc. 14 at 18.)  But Brooker does not cite to any medical opinions in the record stating that he would be absent from work for any specific amount of time due to medical visits. Moreover, there is no evidence to establish he would be required to attend medical appointments during work hours, that his appointments would cause him to miss an entire day of work, or that the need, frequency, and duration of his treatment would continue at the same level.  Indeed, as Brooker's condition stabilized with treatment, it appears from the record that his visits occurred at larger intervals.

Nevertheless, to the extent the ALJ erred in failing to specifically consider treatment needs, any such error was harmless.  "To show that an ALJ's error was not harmless, a claimant must demonstrate a 'substantial likelihood of prejudice.'" *Mariah*, 2021 WL 1660947, at *8.  Brooker has not done so here.  In Brooker's sparse argument as to frequency of treatment, he does not cite to any evidence in the record that these absences would prevent competitive employment or cite to

any medical source opinion that he would frequently miss work due to medical appointments or treatment needs.  Therefore, the Court cannot find a substantial likelihood of prejudice, and any error in failing to consider treatment needs was harmless.

### E.    Vocational Expert's Hypothetical

Finally, Brooker argues the ALJ failed to incorporate all his impairments and limitations into the hypothetical questions posed to the vocational expert. (Doc. 14 at 29-30.)

Hypothetical questions posed to the vocational expert must set out all of the claimant's limitations and restrictions.  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'"  *Magallanes*, 881 F.2d at 756 (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)).  If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value. *Embrey*, 849 F.2d at 422.

Brooker argues that the hypothetical the ALJ relied on to find he could perform work was deficient because it did not incorporate all of his limitations.  As discussed above, the Court has determined the ALJ erred in discrediting Brooker's subjective symptom testimony.  This error may have infected the hypothetical the

ALJ relied on, and in turn, the ALJ's determination that Brooker could perform work.

The Court, therefore, finds the ALJ's determination at step five is not supported by substantial evidence.

## V.    Remand or Reversal

Brooker asks the Court to remand this case for proper consideration of all of the medical evidence and vocational evidence, or alternatively for a remand for an award of benefits.  "[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Reddick*, 157 F.3d at 728.  If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate."  *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate.  On remand, the ALJ shall properly evaluate Brooker's subjective symptom testimony and reconsider whether Brooker can perform work in the national economy based upon

a hypothetical that incorporates all of his impairments and limitations supported by the record.

## VI.   Conclusion

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision be **REVERSED** and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 8th day of August, 2022.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge